IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **STACY FENWICK, Individually and on Behalf of All Others Similarly Situated** | **PLAINTIFF** |
| vs. | No. 5:20-cv-1403 |
| **AMISTAD HOMECARE, INC., RAMONA DIEGO, REBECCA DIEGO and ALFONSO DIEGO** | **DEFENDANTS** |

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COMES NOW Plaintiff Stacy Fenwick ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys Merideth Q. McEntire and Josh Sanford of Sanford Law Firm, PLLC, and for her Original Complaint—Collective Action against Defendant Amistad Homecare, Inc., Ramona Diego, Rebecca Diego and Alfonso Diego (collectively "Defendant" or "Defendants"), she does hereby state and allege as follows:

### I.   PRELIMINARY STATEMENTS

1. This is a collective action brought by Plaintiff, individually and on behalf of all similarly situated employees who were employed by Defendant at any time within a three-year period preceding the filing of this Complaint.

2. Plaintiff, individually and on behalf of all others similarly situated, brings this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees as a result

of Defendants' failure to pay Plaintiff and all others similarly situated overtime compensation for all hours that Plaintiff and all others similarly situated worked in excess of forty per week.

3. Plaintiff also brings this action under the Families First Coronavirus Response Act, Division E—Emergency Paid Sick Leave Act, 29 U.S.C. § 2601, *et seq.* ("FFCRA"), for declaratory judgment, monetary damages, and a reasonable attorney's fee and costs as a result of Defendants' failure to provide paid sick time to Plaintiff under the FFCRA.

## II.   JURISDICTION AND VENUE

4. The United States District Court for the Western District of Texas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

5. Defendant conducts business within the State of Texas.

6. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Texas has personal jurisdiction over Defendants, and Defendants therefore "reside" in Texas.

7. The acts complained of herein were committed and had their principal effect against Plaintiff within the San Antonio Division of the Western District of Texas, and venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III.   THE PARTIES

8. Plaintiff Stacy Fenwick is an individual and resident of Bexar County.

9. Separate Defendant Amistad Homecare, Inc. ("Amistad Homecare"), is a domestic, for-profit corporation.

10. Amistad Homecare's registered agent for service of process is Rebecca Diego at 1026 Central Parkway South, San Antonio, Texas 78232.

11. Separate Defendant Ramona Diego ("Ramona Diego") is an individual and resident of Texas.

12. Separate Defendant Rebecca Diego ("Rebecca Diego") is an individual and resident of Texas.

13. Separate Defendant Alfonso Diego ("Alfonso Diego") is an individual and resident of Texas.

14. Defendants maintain a website at http://www.amistadhhc.com/.

## IV.   FACTUAL ALLEGATIONS

15. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

16. Ramona Diego is a principal, director, officer, and/or owner of Amistad Homecare.

17. Ramona Diego took an active role in operating Amistad Homecare and in the management thereof.

18. Ramona Diego, in her role as an operating employer of Amistad Homecare, had the power to hire and fire Plaintiff, often supervised Plaintiff's work and determined her work schedules, and made decisions regarding Plaintiff's pay, or lack thereof.

19. Ramona Diego, at relevant times, exercised supervisory authority over Plaintiff in relation to her work schedule, pay policy and the day-to-day job duties that Plaintiff's jobs entailed.

20. Ramona Diego acted as the employer of Plaintiff and is and has been engaged in interstate commerce as that term is defined under the FLSA.

21. Rebecca Diego is a principal, director, officer, and/or owner of Amistad Homecare.

22. Rebecca Diego took an active role in operating Amistad Homecare and in the management thereof.

23. Rebecca Diego, in her role as an operating employer of Amistad Homecare, had the power to hire and fire Plaintiff, often supervised Plaintiff's work and determined her work schedules, and made decisions regarding Plaintiff's pay, or lack thereof.

24. Rebecca Diego, at relevant times, exercised supervisory authority over Plaintiff in relation to her work schedule, pay policy and the day-to-day job duties that Plaintiff's jobs entailed.

25. Rebecca Diego acted as the employer of Plaintiff and is and has been engaged in interstate commerce as that term is defined under the FLSA.

26. Alfonso Diego is a principal, director, officer, and/or owner of Amistad Homecare.

27. Alfonso Diego took an active role in operating Amistad Homecare and in the management thereof.

28. Alfonso Diego, in his role as an operating employer of Amistad Homecare, had the power to hire and fire Plaintiff, often supervised Plaintiff's work and determined her work schedules, and made decisions regarding Plaintiff's pay, or lack thereof.

29. Alfonso Diego, at relevant times, exercised supervisory authority over Plaintiff in relation to her work schedule, pay policy and the day-to-day job duties that Plaintiff's jobs entailed.

30. Alfonso Diego acted as the employer of Plaintiff and is and has been engaged in interstate commerce as that term is defined under the FLSA.

31. Defendants are "employers" within the meanings set forth in the FLSA, and were, at all times relevant to the allegations in this Complaint, Plaintiff's employers, as well as the employers of the members of the collective.

32. Defendant employs two or more individuals who engage in interstate commerce or business transactions, or who produce goods to be transported or sold in interstate commerce, or who handle, sell, or otherwise work with goods or materials that have been moved in or produced for interstate commerce, such as medical supplies, medication and vehicles.

33. Defendants' annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

34. Defendants own and operate a home health care company.

35. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA.

36. Plaintiff worked for Defendants as a Physical Therapist Assistant from January of 2020 until the present, although she hasn't worked since November of 2020.

37. Plaintiff's primary duties were to visit Defendant's patients in the patients' homes assist the patients with physical therapy.

38. Defendants also employed other medical professionals such as other Physical Therapy Assistants and Nurses (collectively, "Medical Professionals").

39. Other Medical Professionals also visited Defendant's patients in the patients' homes.

40. Plaintiff was paid on a per visit basis, meaning that she wasn't paid a salary and she wasn't paid by the hour.

41. Plaintiff was supposed to be paid $35.00 for each visit to patients within San Antonio and $52.00 for each visit to patients outside of San Antonio.

42. Other Physical Therapy Assistants were also paid per visit, and, upon information and belief, were paid the same or similar rates as Plaintiff.

43. At all relevant times herein, Defendants directly hired Medical Professionals to work on their behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

44. At all times material herein, Plaintiff and other Medical Professionals have been entitled to the rights, protections and benefits provided under the FLSA.

45. Plaintiff regularly worked more than forty hours per week.

46. Plaintiff estimates she worked approximately fifty hours per week.

47. In addition to the time Plaintiff spent visiting patients, she spent approximately one hour each day completing documentation, calling patients and setting schedules, and this time went unrecorded and uncompensated.

48. Plaintiff was required to clock in when she arrived at a patient's home and clock out when she left, then to clock in with a different code while she was driving and to clock out when she was done driving.

49. Plaintiff was not provided with a code to clock in with while she was doing paperwork. Defendants directed Plaintiff to complete the required paperwork either between visits or at the end of the day.

50. Upon information and belief, other Medical Professionals also regularly worked over forty hours per week.

51. Defendants did not pay Plaintiff or other Medical Professionals an overtime premium for hours worked over forty per week.

52. Upon information and belief, other Medical Professionals were also required to do documentation and scheduling off the clock.

53. Plaintiff knows of at least one instance when Defendants failed to pay her for a visit to a patient.

54. Defendants knew or should have known that Plaintiff and other Medical Professionals were working additional hours off-the-clock for which they were not compensated.

55. In the course of her employment, Plaintiff was regularly required to drive to patients' homes.

56. Plaintiff visited approximately six different patients in their respective homes each day.

57. Plaintiff estimates she drove between 100 and 175 miles each day.

58. Defendant did not reimburse Plaintiff for gasoline or automobile expenses.

59. 29 U.S.C. § 531.35 states, "The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee."

60. Because Defendant failed to reimburse Plaintiff for mileage, she consistently "kicked back" to Defendant the cost of her mileage, which caused additional overtime violations.

61. Upon information and belief, other Medical Professionals were also not reimbursed for their mileage, causing additional overtime violations.

62. At all relevant times herein, Defendants have deprived Plaintiffs and other Medical Professionals of proper overtime compensation for all the hours worked over forty per week.

63. Defendants knew or showed reckless disregard for whether their actions violated the FLSA.

64. In October of 2020, Plaintiff began manifesting symptoms associated with COVID-19.

65. On October 25, Plaintiff was tested for COVID-19. Although she first took a "rapid test" with relatively instant results, her doctor recommended she also get a full test. Plaintiff did not receive her test results from the full test for approximately four days. The test came back negative for COVID-19.

66. Defendant's policy is that an employee who has been tested for COVID-19 must take a leave of absence while waiting for the test results.

67. Plaintiff did not work for the four days she waited to get her test results back.

68. Defendant did not pay Plaintiff sick leave during the time she waited for her test results.

## V.  REPRESENTATIVE ACTION ALLEGATIONS

69. Plaintiff brings her claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by Defendants as Medical Professionals paid on a piece-rate basis at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A. Overtime premiums for all hours worked for Defendants in excess of forty hours in any week;

B. Liquidated damages; and

C. Attorneys' fees.

70. In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

71. The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

72. Plaintiff proposes the following class under the FLSA:

**All Medical Professionals who were paid
on a piece-rate basis in the past three years.**

73. The proposed FLSA collective members are similarly situated in that they share these traits:

    A. They were paid on a piece-rate basis;

    B. They were not paid an overtime premium for all hours worked in excess of forty per week;

    C. They regularly worked more than forty hours per week;

    D. They were subject to Defendants' common policy of requiring them to perform work off the clock; and

    E. They were not reimbursed for mileage.

74. Plaintiff is unable to state the exact number of the class but believe that the class exceeds sixty persons.

75. Defendants can readily identify the members of the Section 16(b) class, which encompasses all Medical Professionals who worked within the relevant time period.

76. The names and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendants, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via first class mail and email to their last known physical and electronic mailing addresses as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

## VI.   FIRST CAUSE OF ACTION
### (Individual Claim for Violation of the FLSA)

77. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

78. Plaintiff asserts these claims for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

79. At all relevant times, Defendants have been Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

80. At all relevant times, Defendant has been an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

81. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

82. Defendants misclassified Plaintiff as exempt from the overtime requirements of the FLSA.

83. Despite the entitlement of Plaintiff to overtime payments under the FLSA, Defendants failed to pay Plaintiff an overtime rate of 1.5x her regular rate of pay for all hours worked over 40 each week.

84. Defendants failed to pay Plaintiffs for all hours worked.

85. Defendants' failure to pay Plaintiff all overtime wages was willful.

86. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

## VII. SECOND CAUSE OF ACTION
(Collective Action Claim for Violation of the FLSA)

87. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

88. Plaintiff, individually and on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

89. At all relevant times, Defendants have been an "employer" of Plaintiff and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

90. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

91. Defendants misclassified Plaintiff and all others similarly situated as exempt from the overtime requirements of the FLSA.

92. Despite the entitlement of Plaintiff and those similarly situated to overtime payments under the FLSA, Defendants failed to pay Plaintiff and those similarly situated an overtime rate of 1.5x their regular rates of pay for all hours worked over 40 each week.

93. Defendants willfully failed to pay overtime wages to Plaintiff and to others similarly situated.

94. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and all those similarly situated for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

### VIII.   THIRD CLAIM FOR RELIEF
### (Individual Claim for Violation of the FFCRA)

95. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

96. Plaintiff asserts this claim for damages and declaratory relief pursuant to the FFCRA, 29 U.S.C. § 5101, *et seq.*

97. At all relevant times, Defendants were Plaintiff's "employers" within the meaning of the FFCRA, 29 U.S.C. § 5110(2).

98. At all relevant times, Plaintiff was an "employee" within the meaning of the FFCRA, 29 U.S.C. § 5110(1).

99. Section 5102 of the FFCRA requires employers to provide paid sick leave to each full-time employee for up to eighty hours. Any employer who fails to

provide paid sick leave shall be considered to have failed to pay minimum wages in violation of the FLSA.

100. Defendants failed to pay Plaintiff sick leave, despite Plaintiff's entitlement thereto.

101. Defendants knew or should have known that their practices violated the FFCRA.

102. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

103. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for, and Plaintiff seeks, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorney's fees as provided by the FFCRA.

## IX.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Stacy Fenwick, individually and on behalf all others similarly situated, respectfully pray as follows:

A. That each Defendant be summoned to appear and answer this Complaint;

B. A declaratory judgment that Defendants' practices alleged herein violate the FLSA and its related regulations;

C. Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

D. Judgment for damages for all unpaid overtime wage compensation owed under the FLSA and its related regulations;

E.    Judgment for liquidated damages pursuant to the FLSA and its related regulations;

F.    Judgment for damages suffered by Plaintiff for all unpaid wages under the FFCRA and its related regulations;

G.    Judgment for liquidated damages pursuant to the FFCRA and its related regulations;

H.    An order directing Defendants to pay Plaintiff and all others similarly situated prejudgment interest, a reasonable attorney's fee and all costs connected with this action; and

I.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**PLAINTIFF STACY FENWICK,
Individually and on Behalf of
All Others Similarly Situated**

SANFORD LAW FIRM, PLLC
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Merideth Q. McEntire*
Merideth Q. McEntire
Tex. Bar No. 24105123
merideth@sanfordlawfirm.com

*/s/ Josh Sanford*
Josh Sanford
Tex. Bar No. 24077858
josh@sanfordlawfirm.com